Madam Clerk, please call the first case of the morning. 115-0179, Maxine Harding v. Davis Chapel. Counsel, you may close and begin. Good morning, Your Honors. May it please the Court, Steve Rappaport for the Petitioner. I have some key points that I wanted to go through, but before doing that, do you need a statement of the facts at all? I don't think so. I think we're all familiar with the factual background of these cases. Okay, great. So then I just wanted to do my best not to rehash what's in the brief, but hit the key points. One key point, Maxine Harvey, the petitioner in this matter, was the only witness that testified at the trial and the commission, and her testimony is unrebutted. So that, I believe, is a key point, and I'll get into how that impacts the standard of review a little later. What I perceived as to be a really key point on this appeal is what's incidental to the employment. If you just looked at those words by themselves, you would think that that means that the injured worker would have to be in the act of working for it to be compensable. However, the cases hold that for it to be incidental to employment, the injury must be a result of a hazard of the employment or a condition of the employer's premises. This case is a situation where, because of the condition of the employer's premises, my client, Maxine Harvey, the petitioner, was injured. And a good example of the fact that incidental to employment does not mean you have to be actually in the act of working, of course, is the issue is... Wasn't she returning from an authorized break? Yes, she was returning from an authorized break. So wouldn't that cover it? I mean, is that really the critical issue, that she was coming back from a break? I don't know that that's a critical issue at all. I think what's the most important issue is that she was injured as a result of a condition on the workplace. Well, how does the general rule, and I think that's maybe where the arbitrator and the commissioner were going, this well-settled rule that's always cited, it resulted from a hazard to which she and the general public was equally exposed. So how are you rebutting that argument? Yes, because this is what I see. After reviewing the cases, the common thread between all these cases is if the injury occurred on the employer's premises, and I'm talking about these break cases, whether it's a lunch, whether it's a break coming back, if it's on the employer's premises, then it is... And when I say employer's premises, that means that the employer has to own or maintain that area. Now, if you take the Chicago Tribune case, that was a case also where an injured worker was injured in an area open to the public. It was a gallery. But because it was the employer's premises, it was found to be compensable. Now, in the Illinois Bell case, the injured worker was injured in a shopping mall in a common area. The court actually looked at the lease to see whether or not the employer had any control over the area where the injured worker slipped. This was also a slip on a waxy floor, and the court said that the employer did not own that area. They had no control over that area, so it wasn't compensable. So the cases, you know, to me the common thread in these cases is if the injury occurred on the employer's premises, which is an undisputed fact in this case, then it is compensable. Well, what about the characterization of the risk itself? You've been talking to this point, and you argued in your brief that it was a risk distinctly associated with the employment. How is this a risk distinctly associated with her employment? And would you agree that looking at this, we should be focusing more on whether or not it's a compensable neutral risk? Right, and what the cases hold with regard to whether something is incidental to the employment in the break cases, it's either a hazard of the employment or a condition of the employment premises, and that you make the distinction as to whether the employer has control over that premises. And that's why you have the different ruling in the Illinois belt telephone where the employer didn't have control over the premises. So here the employer, you're saying there's no dispute that the employer had control of the area where the claimant fell, correct? That's correct. Okay. Then you're going to argue, so this injury occurs, you're going to say, as a direct result of a hazardous condition on the employer's premises, right? Correct. Okay. That's your argument, right? That is my argument. Okay. And then as for, are there any other questions that any of you specifically had on this? Well, when it comes to proof of a hazardous condition, the testimony here was it looked like it was recently waxed. Is that it? Right. It's the testimony of the petitioner that she slipped on a slippery wax floor. Now, it would be, and, you know, that is something that you could observe, but it would be my position as well, you know, that with the first cash financial case, the court specifically held that an uneven or slippery ground at the workplace is an employment-related risk. Was her testimony ever rebutted that the floor was slippery? No. Okay. Is that sufficient evidence to establish a hazardous condition such that it makes it a compensable neutral risk? I do believe it does. It's her unrebutted testimony. What if it's a marble floor, and that's just simply the nature of the floor, it's marble, and the individual slips and falls? Does that make it a hazardous condition, making it compensable? If it's a slippery floor, I do believe so. And it just simply takes the plaintiff's testimony to say it was slippery? It's in the, that's been what she said from the get-go. It's in the ambulance report as well when they picked her up right there at the scene. Mechanical fall on a slippery floor. And there was no evidence presented, or there was no rebuttal to that? There's no rebutting to that. Any other questions that anyone has? I don't believe there are. Thank you, Counsel. Thank you. Counsel, you may respond. Good morning, Justices. May it please the Court, Counsel, my name is Matt Daly. I represent the Appellee City of Chicago. I'm here today asking that you affirm the prior decisions of the Arbitrator Commission as well as the Circuit Court. I'll get right into the responses here. Counsel, obviously the essential argument is that because this individual fell in a building that was owned by the city, it's compensable. Obviously I think that's incorrect. I think the arbitrator and everybody else ruled correctly. I think if you just simply look back to the Caterpillar case, it's not enough just to be at the job site to render it compensable. Counsel's briefs cite to mainly, I think, two cases, the CTA case along with an EGLE discount case. Each of those cases referenced lunch breaks. As you can see from the briefs and the facts, this is not a lunch break case. This is a short 15-minute break in the morning. We know lunch has been deemed to be incidental to employment. This is an individual who decided to go out an entrance that she never uses, is not required to use to perform a personal financial transaction. Was this break authorized, though? I mean, she wasn't operating outside the directions of the employer, though, was she? No, it's an authorized break. Okay. So does it matter what the purpose was for her break? I believe it does, Your Honor. I believe it has to be incidental to work. In this case, I don't believe performing a personal financial transaction would be deemed to be incidental to work. But going to lunch is. Correct. I mean, there's case law that says going to lunch is. Correct. Do you have any authority that says, you know, going to do an errand, a personal errand on an authorized break is not within the compensable? Not specifically, Your Honor, no. You know, as you say, get to the heart of the matter. His argument is this, which has some intuitive appeal, so to speak. He's saying, look, this is connected because it occurred directly as a result of a hazardous condition on the employee's premises. Unlike where you have a slip and fall, people are going in and out in the public. If the employer is in control of an area, creates a hazardous condition, and the injured, the employee gets injured as a direct result of a hazardous condition, why is that not compensable? Well, one, I think it's, I don't want to say misrepresentation, but just because the employee testified that she believed that it was waxed and slippery does not necessarily mean it was slippery. Well, it's only because the Commission did not take issue with her credibility. No, I understand that, Judge, but I think what happened was the arbitrator, as well as the Commission, took the facts as a whole. When she testified that she believes she can tell when floors are waxed. I mean, we probably walked in over a wax floor today, and that she took no precautions to walk around this wax floor. She traversed this wax floor multiple times that day, including going out that exit, as well as taking multiple steps coming back in through that exit, and then she fell. So I think when you take the facts as a whole, and she's never known of anybody in the six years that she's worked there falling on a wax floor. So I don't know how somehow this one day in this one specific spot in six years she was able to, or happened to fall that day, means that's unrebutted. So I think when the testimony and the facts are taken as a whole, I think it is somewhat rebutted that it was a slippery floor. Did the Commission say anything other than in this case the petitioner testified that she slipped on a wax floor in a lobby entrance-slash-exit that she sometimes used and that was open to the general public while returning to work from conducting a personal errand? Did they make any other comment about her testimony in that regard? About the slippery floor? Yeah. No. Well, then where do you get the idea that they somehow discounted her testimony because they didn't believe it? They decided this case solely and exclusively on the fact that she wasn't exposed to any risk greater than the general public. Judge, that's my opinion. I don't want to say with the arbitrator how they ruled and their thought process. My point is that when you take it as a whole, you have somebody who's testified that she believed it's wax, multiple people, it's open to the general public, walked through it all day long and did that day as well as herself, I think it's somewhat, you can make the argument or the inference that it wasn't slippery and wax and that she just happened to fall that day. Well, one would expect that if that were the inference, the Commission would have drawn it, no? I mean, they draw the inferences, we don't. They do, Your Honor, but obviously it's not specifically in there, but I think when it's before Your Honors, you can also draw the inference and I think you should. So, in sum, your position is this was a new tour bus, the same as any the public was exposed to, nothing unusual about it? Nothing unusual about it. It's open to the general public. She wasn't, you know, there's no greater risk. Okay. What difference does it make that the lobby was open to the general public? The difference is that, according to the case law, I think once you have something, you're performing an activity. It's not incidental to your work. Then I think you have to move on then to whether or not you're exposed to a greater risk. Well, there's no question that walking is considered a neutral risk. All right. And a defect in the floor would be the type of qualitative additional risk that the general public's not exposed to. But it's very clear that the comparison that you make in a neutral risk analysis is to a broad cross-section of the general public, not the general public in the same locality. That's the Illinois Institute of Technology Research Institute. That was decided clearly in 2000. I mean, obviously, anybody in the lobby with a slick, waxed floor would always be at the same risk as she would, right? Assuming that's the case. So the question is does a broad cross-section of the general public, are they exposed to a slick, waxed floor? That's the issue. If it's actually a slippery and waxed, which Nolan has solved there, that's the issue. What difference does it make that the lobby is open to the general public? Well, I think, again, whether or not they're exposed to that condition. But you're not going to compare the same people to the general public in the same lobby. I know, but you can make that argument in every building then. I mean, it's just so many traversing. Because anybody else in that lobby obviously will be exposed to the same risk. I mean, Larson in his case says even the lion tamer is at no greater risk than anybody else in the cage. Certainly, Judge. Certainly. Again, it just goes to anybody that's using that particular entrance, I suppose, an entrance which she doesn't use, she's not required to use and she's not ordered to use, and that she only happened to use this day to perform an errand that is not incidental to her employment. And that's why I think the case law is pretty clear that that's not a compensable claim, and that's why I think all the prior decisions were accurate and correct. In this case, just following up with Justice Stewart's question, in the neutral risk analysis, if we're talking about a qualitative increase in the risk posed here due to potentially this slippery condition, here the commission found that she was not exposed to a risk greater than that of the general public. You know, you can infer from that that they didn't find that it was qualitatively increased. Certainly, there's nothing in the opinion of the decision of the commission that would indicate that they found that the slippery floor was a defect, a hazardous condition. Is that right? That's correct. It would appear to me that you would be arguing here that there was insufficient proof of a hazardous condition such that it would allow for this to be a compensable neutral risk. Now, the commission didn't make findings one way or the other as to whether or not they found it to be a hazardous condition. What should we do in that circumstance? Well, and that kind of goes back to my point in regards to the inferences and whether or not the floor was actually slippery and waxed, and I think we can take the facts as a whole. You take her testimony along with the fact that nobody's ever slipped on a waxed floor there in six years and that she traversed that floor multiple times that day, including coming back in, that the floor was not slippery due to being waxed. So you're saying the record taken in total would not establish a qualitative risk? Correct. Nor a hazard or nor a defect. There's photos in there, and the petitioner specifically testified that the only reason that she knows she can't I think you're being redundant there. Qualitative risk assumes hazard, et cetera, et cetera. I mean, how else do you have a qualitative risk? I mean, as Justice Hoffman alluded to, if she testifies that the floor was slippery, hazardous, let's say, commission finds her credible and her testimony is unrebutted, the employer had the opportunity to present contrary evidence, didn't, what are we to do with that? Reject her testimony? No, you don't have to reject her testimony. I think you do exactly what the arbitrator did and what the commission did. They took all the facts and evidence as a whole and determined that there wasn't a hazardous condition and that she was exposed to no greater risk. She was performing something not incidental to her job, and hence it was not compensable based on case law. And simply being at the location is not enough. Well, the commission rejected the claim that it arose out of her employment. In order to reverse the commission, wouldn't you be arguing that that decision was not against the manifest way? I mean, really, you're in a position of saying to the court, there isn't enough evidence to reverse the commission's decision, which by implication was that there wasn't an extra hazardous or a hazardous condition here. And in my brief, I do address that it's essentially a manifest way, and then I also somewhat respond to his argument that it's de novo, because his argument was that they applied the wrong type of case law in terms of it had to be on premise and they were only applying off-premises case law. So I wrote in my brief that this was a manifest way and responded likewise. And, right. This has not a whole lot to do with the case. Why do we wax floors anyway in these public buildings? I'm sorry, I couldn't hear you. Why do we wax floors in these public buildings anyway? I guess to keep them shiny. Why is that important? I don't know that it is. I'm just, you know, it seems like the federal government, when you go down there, it's got all the most slick outside granite and everything else that people are wanting. I don't have an answer for that. The homeowners would be upset if you did that at your home, wouldn't they? And didn't have immunity. Okay. Thank you. If there's nothing else, just ask that you affirm all the prior decisions and awards. Thank you. Just a few points in response. I believe that what the arbitrator overlooked is the fact that it was on the employer premises and that's how she ruled how she did. That's what I believe to be the case. With regard to the manifest weight argument that was just made, it's my position or our position that this should be a de novo standard of review because there are unrebutted facts that are not in dispute. And if the facts aren't in dispute, then it would be a de novo review. But it would also be our position that even if under any standard of review, it should be reversed under whether or not the law was applied correctly or not argument. The law was not applied correctly because she applied the law for an off-premises injury rather than the law for an on-premises injury. Counsel. Yes. At the conclusion of her decision, the arbitrator wrote the basis or the reasoning behind her finding that this didn't arise out of employment. And I'm going to omit certain features of her decision, but she reads the pertinent part of my question. There is no evidence that she was otherwise exposed to any risk greater than that of the general public while traversing the floor on which she fell. Doesn't that indicate that she didn't find a hazardous condition that would make it a compensable neutral risk? Not to me. To me, that indicates that she analyzed this case as if it was an off-premises injury. And, again, with the Chicago Preview case, the injury occurred in an area open to the general public. It was in a gallery, but that was compensable because it was on the employer's premises. Wasn't she required to traverse the gallery to go to work in the Tribune case? It was a path that she was required to take. I do remember reading that in the case. But in this case, she wasn't required to take the path. She just chose it. So does that differentiate it from the Tribune case? I don't think it really does because I don't think there's any case that holds that that was required. I mean, at the building where the petitioner worked in this case, there were two entrances and exits. One, she used to come in to work at this one. She used to go to the cash machine because that was the closer exit for that. But, no, I don't see it. I did not find a case that said that that's required for it to be compensable. In most of the cases, that is the common denominator. It all started with the Bomarillo case where the employee was required to use an exit that had a defect in it. And the Supreme Court said that's compensable because they were required to cross the defect. In this particular case, she wasn't required to cross this floor. She chose it. It's a public area of the building. So I don't know if the cases that have been cited really are on point. I do think that the general principle here is that if, obviously, you may disagree with me, but the general principle here is if the condition of the employer's premises is what caused the fall, then it is compensable. It's incidental to the employment. That's the exact language of the case. That's your position and you're sticking to it, right? I'm sorry? That's your position and you're sticking to it, right? I am. I don't believe there are any more questions. Thank you, Counsel. Thank you very much. Thank you, Counsel Bowles, for your arguments in this matter. This morning we've taken our advisement. A written disposition shall issue. Please call the next case.